UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEPHEN GROHS, et al., | Civ. No. 13-3877 (KM) (SCM) |
| Plaintiffs, | |
| v. | OPINION |
| SANTIAGO, et al., | |
| Defendants. | |

**KEVIN MCNULTY, U.S.D.J.**

## I. INTRODUCTION

Plaintiffs, Stephen Grohs, Rayford L. Smith, Karl Siegle, Victor Acevedo, Richard Lockerson, James T. Howard and Edward Salerno, are civilly committed persons currently residing at the Special Treatment Unit Annex in Avenel, New Jersey ("STU-Annex"). They are proceeding *pro se* with a civil rights complaint pursuant to 42 U.S.C. § 1983. They have all filed applications to proceed *in forma pauperis,* which will be granted based on the information provided therein.

At this time, the Court must review the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from suit. For the reasons set forth below, the complaint is inadequate and will be dismissed, without prejudice to the filing of an amended complaint.

## II. BACKGROUND

The allegations of the complaint will be considered true for purposes of this screening only. The plaintiffs are currently housed at the STU-Annex, not as prisoners serving sentences,

1

but as civilly committed persons. The complaint names the following individuals as defendants: (1) Santiago – Administrator of the STU; (2) Bleekly – Associate Administrator of the STU; (3) Bruce Davis – Acting Assistant Administrator of the STU; (4) M. Rock-Asencio – Lieutenant at the STU; and (5) B. Westrich – Sergeant at the STU.

The STU-Annex consists of three dorms, each with 65 residents. Each dorm has three sinks, four toilets, and five showers. The STU-Annex is divided into cubicles which measure eight feet by eleven feet, each containing two bunk beds. The majority of cubicles house three residents, although some house four. In cubicles with three occupants, the fourth bed space is called a dead-bunk. Storage of the residents' personal property has been an issue. Former Assistant Administrator Johnson allowed each resident to purchase up to four twenty-seven gallon plastic storage bins for that purpose. Johnson also permitted residents to buy their own hooks to dry their bath towels and to construct shelves for storage of small items in their cubicles. Some residents have used dead-bunks to store property.

Beginning in May 2013, defendants Asencio and Westrich began ordering residents to remove all property from the dead bunks and to store their property in the storage bins and lockers. In June 2013, defendant Santiago told residents that he was aware of their complaints about the living conditions, and said that things would be changing. The promised changes have either not come or "are more geared towards a female pet peeve and by a whimsical nature." (Dkt. No. 1 at p. 9.)

Santiago, Bleekly, and Davis know or should know that Plaintiffs receive a lot of paperwork each year that they are responsible for keeping. But because space is limited, Plaintiffs often have to choose what to keep and what to dispose of. Plaintiffs have little or no maneuvering room within their cubicles.

Plaintiffs also allege that STU officials have removed storage cabinets so that they have no place to dry their towels after they have showered. The towels therefore do not dry properly, and emit a dank, musty odor. Plaintiffs also complain that the air conditioning system cannot effectively meet the required rate of clean air exchange, and that the bathroom has a foul stench as a result.

Plaintiffs allege that the number of sinks and toilets available to the residents of the STU-Annex is inadequate. They allege that human feces are sometimes found in the shower area.

Plaintiffs allege that, because of crowding, some residents have to wait for meals, or sometimes have to eat in their cubicles. The thirty minute limit on mealtimes is said to be inadequate.

Plaintiffs state that they have submitted forms to STU officials complaining about the conditions. Responses, they say, come too late or not at all.

In summary, plaintiffs allege that the defendants have violated their due process rights because of the overcrowded conditions at the STU-Annex. Defendants Santiago, Bleekly and Davis are allegedly aware that the plaintiffs have been exposed to an unreasonable risk of injury and disease and have acted with deliberate indifference. Defendants Ascencio and Westrich allegedly have exacerbated the effects of overcrowding and have acted with deliberate indifference in allowing the unhealthy, unsafe and unsanitary environment to persist at STU.Defendants Santiago, Bleekly, and Davis are allegedly unwilling or unable to restrain defendants Asencio and Westrich.

The complaint seeks declaratory, injunctive and monetary relief.

### III. STANDARD OF REVIEW

A. <u>Standard for *Sua Sponte* Dismissal</u>

District courts must review complaints in those civil actions in which a plaintiff is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B). The statute directs district courts to dismiss *sua sponte* any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. That analysis is sometimes informally referred to as "screening."

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (per curiam) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). Under that standard, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive screening, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). While *pro se* pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

B. <u>Section 1983 Actions</u>

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

## IV.   DISCUSSION

A. <u>Conditions of Confinement</u>

Plaintiffs argue that their constitutional rights have been violated by the overcrowding at the STU-Annex. Plaintiffs' conditions-of-confinement claim focuses on four areas: (1) food service; (2) air quality and odors; (3) overcrowded cubicles; and (4) bathroom facilities.

Plaintiffs invoke both the Eighth and Fourteenth Amendments. As I noted in a recent separate case filed by Mr. Grohs:

> "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an

5

> excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer [v. Brennan]*, 511 U.S. [825,] 837 [(1994)]. Thus the mental element is a subjective one: deliberate indifference. And a deprivation that is sufficiently "serious" is a denial of a "minimal civilized measure of life's necessities." *Id.* at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 347 (1981)). That generally implies that prison officials must provide adequate food, clothing, shelter, and medical care, and must institute reasonable safety-measures. *See id.*; *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). To fall short of that standard is to exceed the proper bounds of punishment.

*Grohs v. Yatauro*, 984 F. Supp. 2d 273, 283 (D.N.J. 2013).

As to civilly committed persons, however, it is the Fourteenth Amendment, not the Eighth, that is most applicable.[1] *See Youngberg v. Romeo*, 457 U.S. 307, 324-25 (1982) (concluding that Fourteenth Amendment rather than Eighth Amendment applies to involuntarily committed patients claim of safe conditions of confinement); *Artis v. McCann*, No. 11-3613, 2013 WL 2481251, at *3 (D.N.J. June 10, 2013) (stating that the rights of involuntarily committed patients "more appropriately arise under the Fourteenth Amendment" as opposed to the Eighth Amendment). The Fourteenth Amendment requires that committed persons not be subjected to conditions that amount to punishment, *Bell v. Wolfish*, 441 U.S. 520, 536 (1979), or exceed the proper bounds of professional discretion. *See Youngberg*, 457 U.S. 307, 321-22 (1982); *see also Southerland v. Cnty. of Hudson*, 523 F. App'x 919, 921 (3d Cir. 2013) (noting that the central question in deciding whether a plaintiff has sufficiently alleged a Fourteenth

---

[1] In *Grohs*, I noted that in *Shaw by Strain v. Stackhouse*, 920 F.2d 1135 (3d Cir. 1990), the Third Circuit applied the Fourteenth Amendment analysis to defendants who had decision-making authority and the deliberate indifference standard to those who did not. *See Grohs*, 984 F. Supp. 2d at 284. As explained *infra*, the distinction is unimportant here, because the claims would fail under either standard. *See Grohs*, 984 F. Supp. 2d at 283 (citing *Youngberg v. Romeo*, 457 U.S. 307, 324 (1982)).

Amendment conditions of confinement claim is whether the conditions constituted "punishment.").

A central issue, then, is whether the conditions of confinement cross the line that separates institutional administration from punishment:

> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of the detention facility officials, that determination generally will turn on whether [it has] an alternative purpose . . . and whether it appears excessive in relation to that purpose. . . . Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court may permissibly infer that the purpose of the governmental action is punishment that may not be constitutionally inflicted upon [civilly committed inmates].

*Bell*, 441 U.S. at 538-39; *see also Hubbard v. Taylor* (*Hubbard I*), 399 F.3d 150, 158 (3d Cir. 2005) (citation omitted), *Hubbard v. Taylor* (*Hubbard II*), 538 F.3d 229, 232 (3d Cir. 2008).[2] To constitute punishment, a deprivation must be both serious and intentional:

> Unconstitutional punishment typically includes both objective and subjective components. As the Supreme Court explained in *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991), the objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind." *Id.* at 298, 111 S. Ct. 2321. The Supreme Court did not abandon this bipartite analysis in *Bell*, but rather allowed for an inference of mean rea where the restriction is arbitrary or purposeless, or where the restriction is excessive, even if it would accomplish a legitimate governmental objective.

---

[2] The plaintiffs in *Hubbard I* and *Hubbard II* were pretrial detainees. Conditions-of-confinement claims of pretrial detainees, like those of civilly committed persons, are analyzed under the Fourteenth Amendment. *See Hubbard II*, 538 F.3d at 230 (citing *Hubbard I*, 399 F.3d 150).

7

*Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (citing *Bell*, 441 U.S. at 538-39 & n. 20). As to the "objective component," the court must consider "whether these conditions 'cause inmates to endure such genuine privations and hardship over an extended period of time,' that the adverse conditions become excessive in relation to the purposes assigned to them." *Hubbard II*, 538 F.3d at 233 (citations omitted). That analysis must encompass the totality of the circumstances within an institution. *See id.* ("In conducting this excessiveness analysis, we do not assay separately each of the institutional practices, but [instead] look to the totality of the conditions.") (internal quotation marks and citations omitted). *See Cruz v. Main*, No. 10-5605, 2011 WL 3625068, at *5 (D.N.J. Aug. 15, 2011) (analyzing civilly committed plaintiff's conditions of confinement claim using a totality of the circumstances analysis); *see also Daniels v. Taylor*, No. 13-5510, 2014 WL 3955372, at *5 (D.N.J. Aug. 13, 2014) ("In analyzing whether . . . condition of confinement violate the Fourteenth Amendment, a court considers the totality of the circumstances within an institution.") (citing *Garcia v. Lancaster Cnty. Prison*, No. 13-2018, 2014 WL 176608, at *6 (E.D. Pa. Jan. 15, 2014) (citing *Hubbard I*, 399 F.3d at 160; *Jones v. Diamond*, 636 F.2d 1364, 1368 (5th Cir. 1981), *overruled in part on other grounds, Int'l Woodworkers of Am., AFL-CIO v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986) (en banc)); *Wright v. Atl. Cnty. Justice Facility*, No. 10-6101, 2010 WL 5059561, at *6 (D.N.J. Dec. 2, 2010) (considering the totality of the deprivations alleged to determine whether plaintiff had stated a Fourteenth Amendment conditions of confinement claim). With respect to claims of overcrowding in particular, the issue "is not the number of prisoners who share facilities; rather, it is whether the alleged overcrowding has somehow harmed the prisoner." *Lindsey v. Shaffer*, 411 F. App'x 466, 468 (3d Cir. 2011) (per curiam) (Eighth Amendment claim) (citing *Rhodes*, 452 U.S. at 347-50).[3]

---

[3]   Concededly, I have simplified somewhat. The precise contours of the standard to evaluate a

8

i.  *Food Service*

The Constitution mandates that plaintiffs' basic human needs of food, clothing, shelter, medical care, and reasonable safety are satisfied. *See Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Mora v. Camden Cnty.*, No. 09-4183, 2010 WL 2560680, at *8 (D.N.J. June 21, 2010) (applying *Helling* to claim raised under the Fourteenth Amendment). Plaintiffs' diet must provide adequate nutrition, but the defendants are not liable unless the plaintiffs show both that the deprivation was sufficiently serious and that the officials acted with a sufficiently culpable state of mind. *See Duran v. Merline*, 923 F. Supp. 2d 702, 720 (D.N.J. 2013) (citing *Stevenson*, 495 F.3d at 68) (other citations omitted). As to the objective prong, "'[w]hether the deprivation of food falls below this [constitutional] dimension depends on the amount and duration of the deprivation." *Id.* (quoting *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999)). In *Duran*, the Court noted that "inmates must be served 'nutritionally adequate food that is prepared under conditions which do not present an immediate danger' to their health and well being." *Id.*

---

conditions-of-confinement claim under the Fourteenth Amendment, as opposed to the Eighth Amendment, are not crystal clear. *See* Catherine D. Starve, *The Conditions of Pretrial Detention*, 161 U. PA. L. REV. 1009, 1009 (2013) (stating that the law as it applies to pretrial detainees for which the Fourteenth Amendment is applicable is unclear and inconsistent). Nevertheless, when I consider the minimum standards applicable to convicted prisoners, I must conclude at least that "the state has no *less* of a duty to provide civilly committed persons with adequate food, shelter, clothing, medical care, and safety measures." *Grohs*, 984 F. Supp. 2d at 283 (citing *Youngberg*, 457 U.S. at 324); *see also City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 244 (1983) (noting that the due process rights of a person are at least as great as the Eighth Amendment protections available to a convicted prisoner). Eighth Amendment standards are relevant at least to the extent that they define a floor beneath which the State cannot go. *See Grohs*, 984 F. Supp. 2d at 983 ("[I]t is true as a general matter that persons involuntarily committed are entitled to more considerate treatment and better conditions of confinement than are persons who are being criminally punished.") (citations omitted); *see also Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000) ("'pretrial detainees are entitled to at least as much protection as convicted prisoners, so the protections of the Eighth Amendment would seem to establish a floor of sorts.'") (quoting *Kost v. Kozakiewicz*, 1 F.3d 176 188 n.10 (3d Cir. 1993)). Therefore, while cases involving the Eighth Amendment may not be dispositive here, they do provide some guidance.

(quoting *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (quoting *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980))).

In this case, plaintiffs' assertions of having to wait in line for food and only being given thirty minutes to eat their meals does not satisfy the objective requirement. Plaintiffs make no claim whatsoever that the meals they are served are nutritionally inadequate. Having to wait for a period of time to receive their meals and being provided thirty minutes to eat does not present an immediate danger to the plaintiffs' health or well-being. *Cf. Duran*, 923 F. Supp. 2d at 720 (plaintiff's allegations that he was served cold meals for 45 days was not considered punishment under the Fourteenth Amendment as it did not satisfy the objective requirement); *Tapp v. Proto*, 718 F. Supp. 2d 598, 621 (E.D. Pa. May 13, 2010) (noting that the Fourteenth Amendment guarantees pretrial detainees nutritionally adequate diet but granting summary judgment for defendants as plaintiff failed to provide any direct evidence that he was denied a nutritionally adequate diet), *aff'd by*, 404 F. App'x 563 (3d Cir. 2010) (per curiam); *House v. Fackler*, No. 09-P935-H, 2010 WL 610350, at *7 (W.D. Ky. Feb. 19, 2010) (pretrial detainee failed to allege Fourteenth Amendment conditions of confinement claim where he failed to allege that he was denied sufficiently nutritious meals for any appreciable amount of time) (citing *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977)). This is not "punishment," but an ordinary incident of life in an institution. Of course, this is but one component of plaintiffs' claims, and I do not consider it in isolation.

    ii.    *Foul Odors*

The complaint next claims that there is not enough incoming fresh air and that this leads to foul smells from the bathroom. Furthermore, the plaintiffs state that they have no place to dry their towels properly such that it results in a musty odor. In *Cruz*, the plaintiff complained about

the unsanitary and unhealthy conditions of confinement which included poor air circulation and water quality along with the fact that the ceilings leaked when it rained. 2011 WL 3625068, at *5. Ultimately, the *Cruz* court found that these allegations, when considered in their totality, failed to state a Fourteenth Amendment conditions-of-confinement claim. *See id*. *Cruz* is therefore instructive in this case with respect to plaintiffs' air quality arguments. The Court in *Cruz* found that the plaintiff had failed to state a claim where part of the claim included a lack of proper air circulation. *See also Lichtenwalter v. Maier*, No. 14-0218, 2014 WL 3749126, *6 (N.D. Ohio July 29, 2014) (stating that an odorous cell without amenities does not constitute the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment) (citing *Knop v. Johnson*, 977 F.2d 996, 1012-19 (6th Cir. 1992); *Chandler v. Chapleau*, No. 95-6615, 1996 WL 577603, at *1 (6th Cir. 1996)).

    iii.    *Cubicle Space*

Plaintiffs also cite the overcrowded conditions in their cubicles. They specifically note that cubicles have three and four men each. Each man apparently sleeps on a bunk as the cubicles have double-bunks. Each man is required to keep his personal property in twenty-seven gallon storage bins and lockers. This makes maneuvering difficult, particularly in four-person cubicles.

The Third Circuit's decision in *Hubbard II*, which also examined a claim of overcrowded cells under the Fourteenth Amendment, is instructive. There, the Third Circuit analyzed whether triple-celling pretrial detainees constituted punishment under the Fourteenth Amendment. In *Hubbard II*, the cells evidently were not designed to sleep more than two, and one of the three inmates had to sleep on a mattress on the floor. The plaintiffs alleged that most detainees had to wait from three to seven months for a bunk to become available. Side effects of the arrangement

allegedly included discomfort and disease, as well as splashing of urine and feces from the nearby toilet. Each detainee had only sixteen square feet of unencumbered cell space to himself. *See Hubbard II*, 538 F.3d at 234-35.

The Third Circuit noted that while the pretrial detainees spent a substantial amount of time on floor mattresses, they also had access to large day rooms. *See id.* Furthermore, the record did not substantiate[4] plaintiff's claims that the use of floor mattresses caused disease or led to the splashing of human waste on the plaintiffs. *See id.* Finally, the Third Circuit noted the efforts made by the jail to improve the conditions. *See id.* Accordingly, upon considering the totality of the circumstances, the Third Circuit determined that the conditions as established did not subject plaintiffs to genuine privations and hardship over an extended period of time. *See id.* at 235.

Comparatively, in *Hargis v. Atlantic County Justice Facility*, No. 10-1006, 2010 WL 1999303, at *8 (D.N.J. May 18, 2010), Judge Simandle found that the plaintiff had sufficiently alleged a Fourteenth Amendment conditions of confinement claim based on overcrowding. In that case, the plaintiff alleged that he was confined in a cell seven feet by five feet with two other inmates and that he was forced to sleep on a mattress on the floor only thirteen inches from the toilet. *See id.* at *1, 8. He alleged that he was frequently splashed with urine, feces and toilet water while sleeping on the floor for nine months. *See id.* at *8. He also alleged that he often times had to eat in his cell by the toilet because the day room was overcrowded and did not provide enough space for recreation. *See id.* Thus, he spent most of his time restricted to his small cell. *See id.* Additionally, the plaintiff in *Hargis* complained that the food was nutritionally inadequate, often spoiled, diluted, and minimal to sustain an adequate diet for an

---

[4]  *Hubbard II* involved a grant of summary judgment, and so must be applied to the current procedural context with care.

adult male. *See id.* Analyzing these purported conditions in their totality, the *Hargis* court permitted the Fourteenth Amendment claim to proceed past screening. *See id.*

The alleged conditions of the overcrowded cubicles in this case more closely resemble those in *Hubbard II* than in *Hargis*. This complaint, moreover, does not reveal whether and to what extent plaintiffs may spend time in locations other than their cubicles. In both *Hubbard II* and *Hargis*, the courts appeared to focus on just that point.[5] There are no allegations that plaintiffs are required to sleep on the floor or that there is splashing from an in-cell toilet. Indeed, each man in the cubicle is provided a bunk. It seems that the cubicles, rather than being stuffed beyond their intended capacity, are specifically designed to sleep four.

    iv.    *Bathroom Facilities*

The final condition noted in the complaint is the purported inadequate number of toilets and sinks for residents at the STU-Annex. As previously noted, plaintiffs allege that there are sixty-five residents per dorm and that each dorm has three sinks and four toilets. Plaintiffs allege that "it is inhuman to cause a man, who finds himself in dire need to defecate, to wait in a long line to use the toilet." (Dkt. No. at p. 12.)

In the Eighth Amendment context, the Third Circuit has noted that "lack of access to a lavatory can offend the Eighth Amendment if it is particularly dehumanizing, results in unsanitary conditions, or endangers the health of the prisoner[.]" *Lindsay*, 411 F. App'x at 468 (citing *Young v. Quinlan*, 960 F.2d 351, 365 (3d Cir. 1992). Allegations not dissimilar from those in this case have been found inadequate to state a constitutional violation. *See Shepler v. Jefferson Cnty. Jail Board Member*, 13-0521, 2014 WL 122987, at *2, 7 (W.D. Pa. Jan. 13,

---

[5] This statement should not be construed as any type of requirement that a plaintiff needs to plead the specific amount of time that they spend in their purportedly overcrowded cell/cubicle. However, such an allegation would presumably assist a plaintiff attempting to state a claim by asserting facts which give his overcrowding claim facial plausibility.

13

2014) (finding plaintiff failed to state an Eighth Amendment claim where plaintiff claimed that cell block had one toilet, one shower and two sinks for twenty-two inmates as plaintiff failed to allege that the conditions on the cell block caused him any harm); *Myers v. City of New York*, No. 11-8525, 2012 WL 3776707, at *6 (S.D.N.Y. Aug. 29, 2012) (finding that pretrial detainee failed to state a constitutional violation of overcrowding under the Fourteenth Amendment where sixty detainees are housed in an area with five sinks and five toilets); *Bennett v. Croft*, No. 06-2912, 2007 WL 81825, at *3 (N.D. Ga. Jan. 4, 2007) (finding plaintiff failed to state a Fourteenth Amendment conditions of confinement claim where he alleged among other conditions that there were only four sinks and toilets per 100 bunks).[6] Absent some extreme set of facts, there is no specific ratio of sinks and toilets to prisoners that will make or break a constitutional claim. Applying common human experience, I do not find the ratio here to be unusual or extreme, although it is always possible to complaint that there should be more. The focus, in any case, remains on whether the alleged overcrowding conditions have caused the plaintiffs ascertainable harm. *See Lindsay*, 411 F. App'x at 468.

The only harm alleged here is the inmates' having to wait in line to use the toilet. Analyzing an Eighth Amendment claim, the Third Circuit has held that an alleged wait of up to one hour to use the toilet did not constitute a constitutional violation. *See id.* Here, the allegations do not quantify in any way the length or frequency of waiting times.[7] The necessary harm is not alleged.

---

[6] *Bennett* applied the law in the Eleventh Circuit, which has held that "'the standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments.'" 2007 WL 81825, at *3 n.1 (quoting *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1024 n.5 (11th Cir. 2001) (en banc)).

[7] The complaint does allude to human feces being found in the shower. There is no indication or allegation that this results because there are not enough toilets or showers, or that the facility failed to clean and sanitize the showers after such incidents.

14

### v. *Totality of the Conditions*

Having considered the allegations separately, I also consider them in their totality. Even in combination, I find that these allegations are insufficient to state a claim under the Fourteenth Amendment. Plaintiffs fail to allege that the food they are receiving is nutritionally inadequate. Odors, while unpleasant, are not alleged to have caused harm. Cubicles, while tight, are not devoid of necessary sleeping facilities and the complaint does not allege that plaintiffs are confined to them. The alleged scarcity of toilets and sinks, too, is not alleged to have created conditions akin to punishment. These individually inadequate claims do not add up to a viable conditions-of-confinement claim under the Fourteenth Amendment. This claim will be dismissed without prejudice.

### B. Plaintiff Lockerson – Lower Bunk Claim

Certain plaintiffs appear to raise specific claims on behalf of themselves alone. For example, the complaint also alleges that:

> Plaintiff Lockerson has several documented injuries which require him to be assigned a lower bunk and, in fact, he has a valid lower bunk pass. Even though, for the past several months, and directly because of the overcrowding, STU officials have ignored Lockerson's pass and have been requiring him to occupy an upper bunk, which unnecessarily places his health and safety at great risk.

(Dkt. No. 1 at p. 11.) This appears to be intended as a claim of medical need.

To state a Fourteenth Amendment claim of denial of medical care or attention, Mr. Lockerson must allege that a defendant acted with deliberate indifference to his serious medical needs. *See Lenhart v. Pennsylvania*, 528 F. App'x 111, 115 (3d Cir. 2013) (per curiam) (citing *Revere*, 463 U.S. at 243-44; *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir.

2003)). In this particular area, Fourteenth Amendment and Eighth Amendment standards converge. *See Natale*, 318 F.3d at 381-82. The applicable standard is as follows:

> [f]or the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). We have found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197. Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. . . (which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)). Allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

*Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013) (per curiam). "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *See Mitchell v. Beard*, 492 F. App'x 230, 236 (3d Cir. 2012) (per curiam) (quoting *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (quoting *Monmouth Cnty. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987))). Deliberate indifference can be found "where the prison official persists in a course of treatment in the face of resultant pain and risk of permanent injury." *See McCluskey v. Vincent*, 505 F. App'x 199, 202 (3d Cir. 2012) (internal quotation marks and citation omitted).

Mr. Lockerson fails to allege with specificity that he has a serious medical need, although his allegation that he had a "lower bunk pass" might imply as much. *See Wall v. Bushman*, No. 12-2112, 2014 WL 1322843, at *9 (M.D. Pa. Mar. 31, 2014) ("If Defendant Buschman were aware that Plaintiff was prescribed a lower bunk by a neurosurgeon and chose to disregard this information, Defendant's actions could constitute deliberate indifference."); *Guilfoil v. Pierce*, No. 06-0493, 2009 WL 688957, at *5 (D. Del. Mar. 16, 2009) ("Refusal of prison officials to assign an inmate with a herniated disc to a bottom bunk may constitute deliberate indifference if the inmate's condition is sufficiently serious.") (citations omitted). Also lacking, however, are any allegations that the named defendants knew of any such medical need and intentionally denied him a lower bunk. *See Turner v. Attorney General Pennsylvania*, 505 F. App'x 95, 100 (3d Cir. 2012) (per curiam) (finding district court properly dismissed Eighth Amendment claim because plaintiff did not allege that defendants knew about, let alone disregarded his lower bunk status). Accordingly, this claim will be dismissed without prejudice for failure to state a claim.

C. <u>Plaintiff Smith – Free Exercise Claim</u>

Plaintiff Smith also alleges that he has had to dispose of religious material because he does not have enough space to store both his religious materials and his other personal property. This may have been intended as a free exercise claim under the First Amendment. The First Amendment states that, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . ." U.S. CONST. amend. I. "'Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion.'" *DeHart v. Horn*, 227 F.3d 47, 50 (3d Cir. 2000) (en banc) (quoting *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987)). Nevertheless, "[t]he mere assertion of a religious belief does not automatically trigger First Amendment protections,

17

however. To the contrary, only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection." *Id.* at 51. As a civilly committed person, Mr. Smith presumably is owed at least the same constitutional protections as convicted prisoners. *See, e.g., Bell*, 441 U.S. at 545 (noting that pretrial detainees enjoy at least the same constitutional protections as convicted prisoners).

In this case, Mr. Smith has never identified his faith nor has he identified the sincerely held religious beliefs that required him to retain the materials. He does not state what the materials are. More is required for Mr. Smith to state a free exercise claim. *See Banks v. Fraiser*, No. 06-4152, 2007 WL 38909, at *3 (D.N.J. Jan. 4, 2007) (finding that plaintiff failed to state a free exercise claim where he never identified his faith for purposes of obtaining a religious diet). Nor was he necessarily denied free exercise of religion merely because he was put to the choice of disposing of religious or secular items; absent some (unspecified) hardship, he might easily have decided to keep the religious paraphernalia.

Accordingly, this claim will also be dismissed without prejudice for failure to state a claim upon which relief may be granted.

D.   State Law Claims

Plaintiffs' federal claims are being dismissed without prejudice for the reasons stated above. However, it appears that plaintiffs are also attempting to raise state law claims. Indeed, they assert as a legal claim that:

> New Jersey Legislation also guarantees reasonable treatment of plaintiffs under the 'Patient Bill of Rights', which states, in pertinent part, "No patient shall be deprived of any civil right solely by reason of his receiving treatment under the provisions of this title nor shall such treatment modify or vary any legal or civil right." N.J.S.A. § 30:4-24.2. Plaintiffs, as STU residents, also enjoy rights afforded to them by N.J.A.C. § 10A:35-2.1.

(Dkt. No. 1 at p. 14-15.)

This Court has original federal-question jurisdiction over plaintiffs' § 1983 claims pursuant to 28 U.S.C. § 1331. In the complaint, plaintiffs also cite to 28 U.S.C. § 1332 in attempting to establish jurisdiction over their claims. Section 1332 provides jurisdiction over state law claims if the matter in controversy exceeds the sum or value of $75,000 and is between "citizens of different states." 28 U.S.C. § 1332. There must be complete diversity among the parties—*i.e.,* no plaintiff may be a citizen of the same state as any defendant. *See Grand Union Supermarkets of the Virgin Islands, Inc. v. H.E. Lockhart Mgmt., Inc.*, 316 F.3d 408, 410 (3d Cir. 2003) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 197 (1990)). "A plaintiff, as the party asserting diversity jurisdiction, 'must specifically allege each party's citizenship, and these allegations must show that the plaintiff and defendant are citizens of different states.'" *Molley v. Tesche*, No. 13-3770, 2014 WL 2887824, at *2 (D.N.J. June 25, 2014) (quoting *American Motorists Ins. Co. v. American Employers' Ins. Co.*, 600 F.2d 15, 16 (5th Cir. 1979)); *see also Gay v. Unipack, Inc.*, No. 10-6221, 2011 WL 5025116, at *4 (D.N.J. Oct. 20, 2011). "For inmates, citizenship for diversity purposes is the state in which the inmate was domiciled prior to incarceration, unless the inmate plans to live elsewhere when he is released in which event citizenship would be that state." *McCracken v. Murphy*, 328 F. Supp. 2d 530, 532 (E.D. Pa. 2004) (citations omitted), *aff'd by*, 129 F. App'x 701 (3d Cir. 2005) (per curiam); *see also Molley*, 2014 WL 2887824, at *3.

In this case, plaintiffs do not specifically allege each party's citizenship. Accordingly, they cannot rely on Section 1332 to establish jurisdiction over their state law claims.

The only remaining potential basis for jurisdiction over plaintiffs' state law claims would be supplemental jurisdiction pursuant to 28 U.S.C. § 1367. When a court has dismissed all

claims over which it had original federal-question jurisdiction, it has the discretion to decline to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). As plaintiffs' federal claims have been dismissed for failure to state a claim upon which relief may be granted, and there has been no significant investment of resources at this early stage, I will exercise my discretion to decline supplemental jurisdiction over plaintiffs' state law claims.

## V. CONCLUSION

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant plaintiffs leave to amend the complaint unless amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 03, 114 (3d Cir. 2002). Because it is possible that plaintiffs may be able to amend their complaint with facts sufficient to overcome the deficiencies noted above, the complaint will be dismissed without prejudice. An appropriate order will be entered.

DATED: September 17, 2014

                                                          KEVIN MCNULTY
                                                          United States District Judge